UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WASHINGTON MAILERS UNION LOCAL M-29, affiliated with COMMUNICATION WORKERS OF AMERICA, AFL-CIO, | : : : : : | | |
| Plaintiff, | : : | Civil Action No.: | 08-2206 (RMU) |
| v. | : : | Re Document Nos.: | 9, 10 |
| THE WASHINGTON POST, | : : | | |
| Defendant. | : : | | |

## MEMORANDUM OPINION

GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The parties join this controversy on cross-motions for summary judgment. Washington Mailers Union No. 29 ("the plaintiff" or "the Union") is the exclusive bargaining agent of non-supervisory employees that work in The Washington Post's ("the defendant" or "the Post") mailrooms. The Union filed a grievance, pursuant to an expired collective bargaining agreement ("1998 CBA"), on behalf of one such employee following his termination. Because the court concludes that the plaintiff's grievance is arbitrable under the expired CBA, the court grants the plaintiff's motion for summary judgment and denies the defendant's cross-motion for summary judgment.

## II. FACTUAL & PROCEDURAL BACKGROUND

The Union and the Post have been parties to numerous CBAs over the years. Joint Stipulation ¶ 2. The parties' most recent CBA was in effect from May 18, 1998 through May 18,

2003, *id.* ¶ 3, and laid out a Grievance and Arbitration Procedure, *id.*, Ex. A at 2-5. At the time these motions were briefed, the parties had engaged in negotiations over the terms of a new CBA, but those negotiations had not yielded another CBA. Joint Stipulation ¶ 4.

Attached to the 1998 CBA is a "Memorandum of Agreement between The Washington Post and Washington Mailers Union No. 29" ("MOA"), signed by the parties on May 18, 1998. *Id.*, Ex. A at 43-45. The MOA contains a provision ("the lifetime job guarantee provision") that reads:

> The [Post] agrees that all mailers whose names appear on the Job Guarantee Roster will be guaranteed either a full-time situation or an opportunity to work five (5) shifts per week, as set forth below, with the [Post] in accordance with the provisions of the latest collective bargaining agreement for the remainder of their working lives until their employment ceases through retirement, resignation, death or discharge for cause.

*Id.* at 43. Section 1(f) of the MOA states that "[t]his Job Guarantee will not be subject to amendment or revision in future collective bargaining negotiations." *Id.* at 44.

William Jenkins III was one of the Post employees listed on the Job Guarantee Roster. Joint Stipulation ¶ 6. Jenkins began his employment with the Post on or about November 3, 1973. *Id.* ¶ 7. By letter dated October 15, 2008, the Post informed Jenkins that his employment was terminated for "gross misconduct." *Id.* ¶ 8 & Ex. B. On October 16, 2008, the Union filed a grievance challenging Jenkins's termination, pursuant to step one of the Grievance and Arbitration Procedure. Joint Stipulation ¶ 9 & Ex. A at 3. On November 20, 2008, the Joint Standing Committee met, Joint Stipulation ¶ 10, "to hear both parties and their representatives," *id.*, Ex. A at 3.[1] On or about December 4, 2008, the Union demanded that Jenkins's grievance be arbitrated, pursuant to step three of the Grievance and Arbitration Procedure. Joint Stipulation ¶

---

[1] This Committee was comprised of two representatives appointed by the Post and two representatives appointed by the Union. Joint Stipulation, Ex. A at 2.

2

11 & Ex. A at 3. On or about December 6, 2008, the Post formally denied Jenkins's grievance and refused to participate in arbitration. Joint Stipulation ¶ 12.

The Grievance and Arbitration Procedure of the 1998 CBA applies to any "disagreement involving an alleged violation of a specific provision of [the 1998 CBA], including a controversy over any form of discipline or discharge." *Id.*, Ex. A. at 3. On several prior occasions, some period of time has elapsed between the expiration of one CBA and the implementation of a new one. Joint Stipulation ¶ 13. During these lapses, including the one following the expiration of the 1998 CBA, the Union continued to file grievances concerning, among other issues, the discipline and termination of employees, and the Post consistently took the position that the grievances were not subject to arbitration under the expired CBA. *Id.* None of these grievances were ever arbitrated; however, none involved the discharge of an employee covered by the MOA and listed on the Job Guarantee Roster. *Id.*

On December 19, 2008, the plaintiff commenced this action, requesting that the court compel arbitration of Jenkins's grievance, pursuant to the 1998 CBA. *See generally* Compl. On April 14, 2009, the plaintiff filed a motion for summary judgment, arguing that Jenkins's grievance is covered by the arbitration provision of the 1998 CBA and that the grievance "arises under" that CBA. *See generally* Pl.'s Mot. The defendant filed a cross-motion for summary judgment, contending that the grievance is not arbitrable because the arbitration provision of the 1998 CBA did not survive expiration and because the grievance did not "arise under" that CBA. *See generally* Def.'s Mot. As both motions are fully briefed, the court now turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)). To prevail on a motion for summary judgment, the moving party must show that the opposing party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the opposing party, a moving party may succeed on summary judgment. *Id.*

The opposing party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).

## B. The Court Grants the Plaintiff's Motion for Summary Judgment on the Arbitrability of Jenkins's Grievance

In *Nolde Brothers, Inc. v. Bakery Workers*, the Supreme Court held that in cases in which the parties to an expired agreement disagree over a provision of the expired agreement, "the presumptions favoring arbitrability must be negated expressly or by clear implication." 430 U.S. 243, 255 (1977). But in *Litton Financial Printing Division v. NLRB*, the Court "refuse[d] to apply that presumption wholesale in the context of an expired bargaining agreement, for to do so would make limitless the contractual obligation to arbitrate." 501 U.S. 190, 209 (1991). The *Litton* Court held that, as a general rule, post-expiration grievances are not presumptively arbitrable unless they "aris[e] under" the contract. *See id.* at 205-06.

A post-expiration grievance "arises under" the contract in one of three ways. *Id.* at 205-06. First, a post-expiration grievance arises under the contract "where it involves facts and occurrences that arose before expiration." *Id.* at 206. Second, a post-expiration grievance arises under the contract "where an action taken after expiration infringes a right that accrued or vested under the agreement." *Id.* Generally, "rights which accrued or vested under the agreement will . . . survive termination of the agreement." *Id.* at 207. Third, a post-expiration grievance arises under the contract "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 206. "[I]f a collective-bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement." *Id.* at 207-08. Under these three exceptions, a post-expiration grievance can be said to "arise under" the expired agreement, falling within the presumption of post-expiration arbitrability. *See generally id.* at 205-08.

The plaintiff contends that the lifetime job guarantee is a vested right that survived the expiration of the 1998 CBA. Pl.'s Mot. at 12. The defendant maintains that the parties never agreed to give post-expiration effect to the Grievance and Arbitration Procedure of the 1998 CBA. *See* Def.'s Reply at 2.

A contractual right may vest in more than one way. *See, e.g.*, *Cincinnati Typographical Union No. 3 v. Gannett Satellite Info. Network, Inc.*, 17 F.3d 906, 911 (6th Cir. 1994) (explaining two different ways in which a right may vest: (a) if "the parties intended a right to vest;" and (b) if the right "can be worked toward or accumulated over time"). The parties agree, Def.'s Mot. at 15-16, Pl.'s Reply at 9, that the lifetime job guarantee in the MOA, unlike provisions concerning severance pay, vacation pay or pension benefits, does not fall under the category of a vested right that is "worked toward or accumulated over time," *Cincinnati Typographical Union*, 17 F.3d at 911. But, as explained in *Cincinnati Typographical Union*, another way to determine that a right has vested is to demonstrate that "the parties intended [the] right to vest." *Id.* at 910.

As the defendant points out, Def.'s Mot. at 9, a court may look to "contract language or extrinsic evidence" to determine whether the parties intended a right to vest, *Cincinnati Typographical Union*, 17 F.3d at 910. This includes "evidence of the intended *duration* of the right with regard to particular employees." *Id.* at 911. In this case, the language of the parties' MOA explicitly stated that "all mailers whose names appear on the Job Guarantee Roster will be guaranteed either a full-time situation or an opportunity to work five (5) shifts per week . . . *for the remainder of their working lives*," apart from three exceptions that are not applicable here. Joint Stipulation, Ex. A at 43 (emphasis added). This guarantee was "not subject to amendment or revision in future collective bargaining negotiations." *Id.* at 44. Contract language that broadly guarantees employment for the duration of a specified individual's "working life," and

6

that is not subject to revision, strongly supports a determination that the parties intended the right to vest and be guaranteed for the future. *Cf. Cincinnati Typographical Union*, 17 F.3d at 911 (ruling that the limited circumstances articulated in a CBA's protection of employees indicated that the parties did not intend to create "a right vested and thus guaranteed for the future"). Because the parties in the instant case intended Jenkins's lifetime job guarantee to vest, the lifetime job guarantee constitutes a "vested" right and is therefore arbitrable under *Litton*. *See Litton*, 501 U.S. at 205-06 (explaining that the second exception to the general rule against arbitrability of post-expiration grievances is "where an action taken after expiration infringes a right that accrued or vested under the agreement").

Indeed, two circuits that have ruled on the post-expiration arbitrability of substantially similar contractual lifetime employment guarantees have concluded that the job guarantee was a "vested right." *See Detroit Typographical Union No. 18 v. Detroit Newspaper Agency*, 283 F.3d 779, 782 (6th Cir. 2002); *Cumberland Typographical Union No. 244 v. Times & Alleganian Co.*, 943 F.2d 401, 405 (4th Cir. 1991). In *Detroit Typographical Union*, the plaintiff was named a lifetime job guarantee holder under the Memoranda of Agreement entered into between the union and the newspaper. 283 F.3d at 782. The Memoranda of Agreement stated that its provisions "shall be ongoing and part of all future collective bargaining agreements and shall not be subject to amendment except by mutual consent of the parties." *Id.* The CBA that expired on April 30, 1995 provided that an arbitrator would decide "all disputes regarding the interpretation of any portion of [the] agreement." *Id.* at 783. After the CBA expired, the union filed a grievance on behalf of the lifetime job guarantee holder, but the newspaper refused to arbitrate the grievance. *Id.* The Sixth Circuit held that because the "right had fully vested," the dispute

concerning the proper interpretation of the expired CBA "should be resolved according to the arbitration provision of that agreement." *Id.* at 787.

Similarly, in *Cumberland Typographical Union*, a union and an employer had negotiated a lifetime job guarantee agreement for certain employees. 943 F.2d at 402. The terms of the job guarantee were to "continue in force through succeeding agreements unless changed by mutual agreement between the parties." *Id.* at 403. The CBA between the parties also included a grievance-arbitration procedure. *Id.* After the CBA expired, the union filed a grievance, alleging that an action taken by the newspaper violated the lifetime job guarantee. *Id.* When the employer refused to arbitrate the issue, *id.*, the Fourth Circuit ruled that the job guarantee right was a vested right and therefore subject to binding arbitration under the expired CBA, *id.* at 405, 407.

Like *Detroit Typographical Union* and *Cumberland Typographical Union*, this case involves a continuing lifetime job guarantee incorporated under an expired CBA. *Compare* Joint Stipulation, Ex. A at 43 (promising that "all mailers whose names appear on the Job Guarantee Roster will be guaranteed [employment] . . . for the remainder of their working lives"), *with Cumberland Typographical Union*, 943 F.2d at 402-03 (explaining that a job guarantee stating that "all employees . . . whose names appear on the attached priority list will be retained on situations for the remainder of their working li[ves]" created a vested right), *and Detroit Typographical Union*, 283 F.3d at 782 (stating that the lifetime job guarantee at issue was "virtually identical" to the lifetime job guarantee in *Cumberland Typographical Union* and thus created a vested right). The court, therefore, concludes that Jenkins's lifetime job guarantee is a right that the Union and the Post intended to vest.

The Post contends that the fact that "the parties have never arbitrated a grievance concerning the discipline or termination of any employee, or any other issue, after contract expiration and in the absence of a currently effective agreement" supports a determination that the parties did not intend post-expiration arbitrability. Def.'s Mot. at 9. The court considers this argument unpersuasive because none of the aforementioned grievances involved the issue at hand, namely, "the discharge of an[] employee covered by the Memorandum of Understanding and listed on [the Job Guarantee Roster]." Joint Stipulation ¶ 13.

In sum, because the lifetime job guarantee is a "vested right," it "arises under" the expired 1998 CBA and is thus arbitrable. *See Litton*, 501 U.S. at 205-06, 207 (explaining that a "post[-]expiration grievance can be said to arise under the contract . . . where an action taken after expiration infringes a right that accrued or vested under the agreement," and "[r]ights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement").

Even assuming *arguendo* that the lifetime job guarantee is not a "vested right" under *Litton*'s second exception, "the disputed contractual right" – the lifetime job guarantee – "survives expiration of the remainder of the agreement" under *Litton*'s third exception. *See Litton*, 501 U.S. at 205-06; *see also Detroit Typographical Union*, 283 F.3d at 782 (quoting language from the parties' CBA, which states that "the guarantee commitment shall endure beyond the term of any specific Collective Bargaining Agreement executed between the parties"). The parties' CBA explicitly provided that the job guarantee applied for the "remainder of [Jenkins's] working li[fe]," Joint Stipulation, Ex. A at 43, impervious to "amendment or revision in future collective bargaining negotiations," *id.* at 44.

9

Thus, because the lifetime job guarantee "survives expiration of the remainder of the agreement," it "arises under" the expired CBA and is thus arbitrable. *See Litton*, 501 U.S. at 205-08; *see also Detroit Typographical Union*, 283 F.3d at 782; *Cumberland Typographical Union*, 943 F.2d at 405.

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment and denies the defendant's cross-motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of March, 2010.

RICARDO M. URBINA<br>
United States District Judge